Frederick Dietz *vs.* United Electric Railways Co.

Same *vs.* Adelaide Knight.

July 11, 1941.

Present: Flynn, C. J., Moss, Capotosto and Baker, JJ.

CAPOTOSTO, J. These two actions of trespass on the case for negligence concern the same accident. They were consolidated for trial in the superior court on motion of the plaintiff. The cases were tried before a justice of that court, sitting with a jury, and resulted in a verdict for the plaintiff in each case in the sum of $2000. Both defendants thereafter filed motions for a new trial, which were heard and denied.

The cases are before us on bills of exceptions by each defendant. The exceptions pressed by the defendant United Electric Railways Company are: (1) Error in denying its motion for a directed verdict; (2) error in denying its motion for a new trial; and (3) error in denying its motion to take the case from the jury. The exceptions relied upon by the defendant Adelaide Knight are to the same effect. All other exceptions in both bills of exceptions not expressly waived, but which were neither briefed nor argued, are deemed to have been waived.

The plaintiff sustained substantial injury while a passenger on a bus of the defendant company, which collided with an automobile owned by the defendant Knight and operated by her agent. No question of the plaintiff's due care, or of agency, or of damages is involved in these cases. The only issue before us is whether either or both of these defendants were guilty of negligence resulting in injury to the plaintiff.

. It appears in evidence that the accident happened in the intersection of Broad, Winter, and Lockwood streets in the city of Providence, at about 11 o'clock, a.m., on October 5; 1939. Neither Winter nor Lockwood street crosses Broad street, which is about 60 feet wide at the place of the accident and runs approximately east and west. Winter street enters Broad street from the north with a delta-like opening about 75 feet wide. Lockwood street, a much narrower street, enters Broad street from the south.

Two tracks for trolley cars are in the center of Broad street. On that street, some 50 feet east from the northeast corner of Broad and Winter streets, there is a designated stop for outbound busses and trolley cars of the defendant company. Traffic at the intersection in question is controlled by automatic traffic lights, which turn from red to green, and from green, to yellow, to red. Road and weather conditions were good at the time of the accident.

The plaintiff testified that he boarded a bus, through its front door, at the above-described stop; that the bus was outbound, that is, going westerly on Broad street, and had stopped close to the northerly curb of that street, with its front door at or a few feet beyond the stop; that he stepped from the curb on to the bus, which started while he was going to a seat in the rear thereof; that when he had gone about one half the length of the bus, it came to a sudden stop, throwing him to the floor and injuring him; that he did not know the cause for such a sudden stop; and that, in his opinion, the bus had gone about 50 feet westerly from the northeast corner of Broad and Winter streets, when it suddenly stopped.

William Wibberly, the operator of the outbound bus, testified that when he stopped to receive the plaintiff as a passenger the side of the bus was about one foot from the northerly curb of Broad street, and its front door was about three feet from the northeasterly corner of Winter street. At that time, the traffic light for outbound traffic on Broad street was green. This light continuing green, Wibberly,

after the plaintiff had boarded the bus, started it moving straight ahead. He then observed a number of inbound automobiles entering or approaching the intersection from the west. He first noticed the Knight automobile, hereinafter identified merely as the automobile, when it started to cut out of the inbound line of traffic in order to make a left turn into Winter street. The bus, moving slowly, was then a little more than one-quarter of the way across the opening of Winter street.

Wibberly further testified that the automobile started to make such turn when it was about 25 or 30 feet away from the bus, and that it cut "diagonally" across Broad street in front of him. Realizing the possibility of an accident, he then put on "both brakes and brought the bus to a sudden stop", within three or four feet. The rest of his testimony is to the effect that, while the bus was at a "dead stop", the automobile continued making a diagonal left turn into Winter street; that there was no skidding or swerving of the rear end of the automobile toward the bus in making such turn; and that the right rear of the automobile collided with the right front of the bus.

Clarence E. Woodward, the driver of the automobile, testified that he approached the intersection at a speed of eight or ten miles an hour, with the wheels of the automobile straddling the inner rail of the eastbound track; that he did not stop before entering the intersection, as the light was green; and that, to the best of his recollection, no other automobile was directly in front of him.

Woodward further testified that, as he entered the intersection, he signalled for a left-hand turn by extending his arm out of the open window of the automobile; that he proceeded almost to the center of the intersection before starting to make the left turn because of another automobile which was on Winter street near the intersection and headed toward Broad street, either stopped or moving slowly, apparently waiting for the light to change in its favor; that he did not turn to his left sooner on account

of this automobile on Winter street, as "some drivers steal a light at times or coast over the stop line"; and that, "to swing around" this automobile so located at the entrance of Winter street, he made more of an "abrupt" or "nearly a right angle turn" to his left than he otherwise would have done.

This witness further testified that he first noticed the bus at the bus stop on Broad street, either stopped or moving very slowly, at the time or immediately before he made the left turn. He next saw the bus, "which seemed as though it was coming very fast", when it was about six or eight feet away from him, at which time the front of the automobile was at or about the crosswalk on Winter street. Since the bus was then "too close for comfort", he increased his speed to clear it, but was unsuccessful, the right front corner of the bus striking the right rear of the automobile.

The testimony of the bus operator and of the driver of the automobile, with reference to the positions of these vehicles when they came to a stop immediately after the accident, was as follows: The former testified that the front of the bus was at or about the center of the intersection, while the front of the automobile was "over the crosswalk" or some eight feet into Winter street. The latter testified that the bus was stopped "entirely past or two-thirds past" the rear of the automobile, which was then completely in Winter street.

There was no damage to the bus. Wibberly and Woodward agreed, however, that the right rear fender and rear bumper of the automobile were damaged. The evidence also showed that the wheel cover of the right rear wheel of the automobile was knocked off in the collision.

These cases rest almost entirely on the testimony of the bus operator and of the driver of the automobile. With the exception of what follows, the testimony of other witnesses may be dismissed as unimportant. Milton M. Mason, who was on the front seat of the automobile, testified that he

did not know how the accident happened, as he was turned towards the rear of the automobile talking to the defendant Knight. He did testify, however, that Woodward "stopped for the red light" at the intersection, and that at that time the bus was also stopped at or near the bus stop, both vehicles apparently "waiting for the light."

Ellen Velander and Sarah A. Russell, passengers on the bus, were called as witnesses by the defendant company. The former testified that her attention was attracted by the sudden stopping of the bus, which was immediately followed by a "scraping noise." When she first noticed the automobile "it was completely off Broad Street". The latter testified that all she knew of the accident was that the bus stopped "when the crash came. . . . I felt the impact and it almost threw me off my seat into the vestibule, and I had a number of bundles in my arms and they were scattered."

The evidence and the reasonable inferences therefrom, when considered as a whole, are fairly open to different conclusions. One reasonable conclusion is that both the bus operator and the driver of the automobile were more concerned with trying to "steal" the traffic light for their individual advantage than with the changing course of traffic reasonably to be expected at that time and place; and that therefore both failed to exercise the care that ordinary prudence required in the then-existing situation, to the damage of the plaintiff. In the circumstances, the motion of each for a directed verdict was properly denied. The exceptions of both defendants on this point are overruled.

The defendant railway company next contends that the trial justice erred in denying its motion for a new trial. Defendant Knight contends likewise as to her own case. Each defendant, in arguing the exception on this point, deals with the testimony of Wibberly for the former and of Woodward for the latter as if the testimony of each were uncontradicted and unimpeached, ignoring the fact that when the testimony

of one is considered in connection with the testimony of the other an entirely different situation may be presented by the evidence. The trial justice was not so limited in his consideration of the evidence, or of, the reasonable inferences therefrom, or of the credibility of the witnesses. It was his duty, in considering a motion for a new trial, to pass his independent judgment upon the weight of all the evidence and the credibility of the witnesses. *Nichols* v. *New England Tel. & Tel. Co.,* 57 R. I. 180, 183, and cases cited.

The complaint of both defendants that, in ruling on the motions for a new trial, the trial justice failed to take into consideration the physical facts, meaning the position of the bus and of the automobile after the accident, is without force. The real positions of these vehicles at that time were the subject of conflicting evidence, and the determination of such positions depended upon the credibility of the testimony on this point.

In his decision denying the motions of both defendants for a new trial, the trial justice briefly, but fairly, reviews the evidence, and specifically refers to the position of the two vehicles as testified to by Wibberly and Woodward. This language of the trial justice's decision shows that he did not overlook or misconceive material evidence and that he applied the correct rule of law to the circumstances of this case in approving the verdict. As we cannot say that his decision was clearly wrong, the exception to the denial of defendant's motion for a new trial is overruled in each case.

At the conclusion of the argument for the plaintiff, both defendants moved that the cases be taken from the jury and passed on the ground that the defendants were prejudiced by certain alleged improper remarks by plaintiff's attorney. The time when and the manner in which alleged improper argument to the jury shall be called to the attention of the trial justice have been decided by this court in a number of cases. *Menzoian* v. *Johnson,* 57 R. I. 196, 203; *State* v. *Farr,*

29 R. I. 72, 79; *Industrial Trust Co.* v. *Feuer*, 177 A. (R. I.) 351. For some undisclosed reason, the defendants here saw fit not to make any such complaint until plaintiff's counsel had finished his argument. This was a clear violation of our well-established rule, which would warrant dismissing the defendants' exceptions on this point without further consideration. However, we need not go thus far in these cases, as the trial justice in his charge clearly instructed the jury to disregard the alleged improper remarks of plaintiff's attorney and to decide the cases on the evidence, and on the evidence alone. In the circumstances, we find no reason to sustain defendants' claim of prejudice. The exceptions of both defendants on this point are overruled.

All exceptions of the defendant in each case are overruled, and each case is remitted to the superior court for the entry of judgment on the verdict.

*Rosenfeld & Murphy, John G. Murphy,* for plaintiff.

*Clifford Whipple, Earl A. Sweeney,* for defendant United Electric Railways Company.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for defendant Adelaide Knight.